821 F.2d 191
 Marilyn STAPLETON for Herself and on Behalf of the
Democratic Party of the Virgin Islands and Edgar
Iles, Gaylord Sprauve, Elmo Jacobs,
William Harvey, Cleone Creque
Maynard, and David Puritz
v.
BOARD OF ELECTIONS, ST. THOMAS-ST. JOHN and Board of
Elections, St. Croix.
Appeal of Intervenor, James O'BRYAN, Jr.
 No. 87-3036.
 United States Court of Appeals,
Third Circuit.
 Argued May 1, 1987.
Decided June 16, 1987.
 
 Edgar D. Ross (argued), Law Offices of Ross and Cannon, Alicia Suarez, Fredriksted, St. Croix, U.S. Virgin Islands, for appellant.
 Bernard M. VanSluytman (argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee.
 Before SEITZ, HIGGINBOTHAM and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 James O'Bryan, Jr. appeals from the January 8, 1987 order of the district court denying his motion for reconsideration of the writ of mandamus issued by it. We have jurisdiction under 28 U.S.C. Sec. 1291 (1982)
 
 I.
 
 2
 The general election for the Virgin Islands was held on November 4, 1986. From a single paper ballot, electors selected a governor, a lieutenant governor, an at-large senator, and seven additional members of the legislature from the St. Thomas-St. John District or the St. Croix District. The Democratic Party of the Virgin Islands endorsed five district candidates for the St. Thomas-St. John district.
 
 
 3
 Each ballot consisted of two pages. The ballot instructions appeared at the top of the first page and included the following language:
 
 
 4
 To vote a straight party ticket, that is for all candidates of a particular party, make a crossmark (x) opposite the name, emblem or symbol of the party of your choice.
 
 
 5
 If the political party you have selected does not have a complete slate of candidates, you may vote for additional candidates so that the total number of candidates from the political party you have selected plus the additional candidates does not exceed the total number for which you are entitled to vote.
 
 
 6
 DO NOT SELECT MORE THAN ONE PARTY EMBLEM OR SYMBOL.
 
 
 7
 The party symbols appeared below the instructions. The candidates for governor and lieutenant governor appeared below the party symbols. The senator at large candidates were listed at the top of the second page and were followed by the district candidates.
 
 
 8
 In canvassing the returns, the Board of Elections applied a total invalidity rule to mismarked ballots. It determined that a ballot would not be counted for any office if (1) the voter marked a party symbol and marked an at-large candidate who was not a candidate of the selected party; or (2) the voter marked a party symbol and proceeded to mark boxes for various district candidates who were not candidates of that party, if the sum of the district candidates fielded by the selected party plus the additional candidates selected by the elector exceeded the total number of district candidates for which the elector was entitled to vote.
 
 
 9
 Of the approximately 27,000 ballots cast in the general election, the Board of Elections treated 1,378 as invalid, primarily for the reasons described above. The Board of Elections certified James O'Bryan, Jr., an independent, as the winner of the seventh district seat for the district of St. Thomas-St. John.
 
 
 10
 The Democratic Party of the Virgin Islands petitioned the district court for a writ of mandamus or an injunction against the Board of Elections, arguing that the Board should have treated the ballots as only partially invalid. The Democratic Party joined as involuntary plaintiffs certain Democratic candidates who had lost the election under the total invalidity rule.
 
 
 11
 The district court determined that a ballot invalid as to one race is valid as to the other races. It reasoned that there was no language in the statute, as amended in 1984, that requires a rule of total invalidity. In fact, the election statute makes it clear that the intention of the voter is paramount and should be given effect when it can be ascertained. Accordingly, the district court issued the writ commanding the Board of Elections to recanvass the ballots and certify the results.
 
 
 12
 The Board of Elections complied with the writ. After a recount, it determined that David Puritz, a Democrat, had won the seventh seat for the St. Thomas-St. John District, beating O'Bryan by 28 votes.
 
 
 13
 On December 31, 1986, O'Bryan filed a motion to intervene in the action. On January 5, 1987, he moved for reconsideration of the writ. The district court granted intervention, but declined to reconsider the issuance of the writ. The Board certified Puritz as the winner. Puritz took the oath of office on January 16, 1987. This appeal by O'Bryan followed.
 
 II.
 
 14
 O'Bryan argues that the district court erred in holding that partially invalid ballots must be counted for those offices where the voter's intent is apparent. He contends that ballots improperly marked as to a particular office are completely invalid under Virgin Islands law and may not be counted for any office. Our review of this legal issue is plenary.
 
 
 15
 In 1984, the Virgin Islands Legislature passed the Election Reform Act in anticipation of a change from paper ballots to voting machines. See Virgin Islands Session Laws, Act No. 4934 (May 3, 1984). The legislature provided that "upon the non-availability or non-functioning of the electronic voting machines for the primary and general elections of 1984, the election process heretofore existing in this title shall be reinstituted as provided in Title 18, Virgin Islands Code." Section 21, Election Reform Act of 1984.[1] Certain amendments, however, were to take effect even if voting machines were not used. Section 22, Election Reform Act of 1984. Because paper ballots were used in the 1986 general election, the preamendment version of the election laws applied except as otherwise provided in section 22.
 
 
 16
 The preamendment law allowed a voter to vote for a party slate by marking the party symbol. See 18 V.I.C. Sec. 584(c)(2). If, however, a voter wanted to vote for candidates of different parties, he or she was required to mark the box for each individual candidate. See Sec. 584(c)(4).
 
 
 17
 These subdivisions are essentially unchanged by the Election Reform Act. New section 584(c)(5), however, describes the voting procedure to be used when the voter wishes to vote a party ticket but the party has not fielded a complete slate of candidates:
 
 
 18
 the elector may vote for every candidate of a political party by depressing the button opposite the name of the political party and by also voting for a certain number of additional candidates, so that the total number of candidates voted for by voting for the party slate plus the additional candidates does not exceed the number of candidates for which the elector is entitled to vote.
 
 
 19
 18 V.I. Sec. 584(c)(5) (1985 Supp.). Under section 22 of the Election Reform Act, this provision took effect notwithstanding the unavailability of voting machines.
 
 
 20
 Preamendment section 492(a) required that the ballots include the following language:
 
 
 21
 To vote a straight party ticket, that is, for all the candidates of a particular party whose names appear on the ballot, make a crossmark (x) in the square in the Party Column at the top of the ballot opposite the name and emblem of the party of your choice.
 
 
 22
 DO NOT MARK MORE THAN ONE SQUARE UNDER THE PARTY COLUMN. MARKING MORE THAN ONE SQUARE IN THE PARTY COLUMN WILL INVALIDATE THE BALLOT.
 
 
 23
 To vote a split ticket, that is, to vote for any combination of candidates from different political parties, or political bodies or independent candidates, make a crossmark (x) in the square opposite the names of the candidates for whom you wish to vote. IN SUCH CASE, DO NOT MAKE ANY MARK IN THE PARTY COLUMN OR THE BALLOT WILL BE INVALIDATED.
 
 
 24
 18 V.I.C. Sec. 492(a). Under this provision, a ballot is totally invalid if the voter marks the party symbol and makes a selection in any section of the ballot that is inconsistent with the symbol choice. See Boschulte v. Todman, Vol. II, 1982 St. Thomas Supp. ---- (Civ. NO. 82-280) (D.V.I.1982), rev'd on other grounds 694 F.2d 939 (3d Cir.1982).
 
 
 25
 Under amended section 492(a), the following language must be included on the official ballots:
 
 
 26
 To vote a straight party ticket, that is for all the candidates of a particular party, depress the button opposite the name, emblem or symbol of the party of your choice.
 
 
 27
 If the political party you have selected does not have a complete slate of candidates, you may vote for additional candidate so that the total number of candidates from the political party you have selected plus the additional candidates does not exceed the total number for which you are entitled to vote.
 
 
 28
 DO NOT SELECT MORE THAN ONE PARTY EMBLEM OR SYMBOL.
 
 
 29
 18 V.I.C. Sec. 492(a) (1985 Supp.).
 
 
 30
 Because the amendments to section 492(a) are not among those listed in section 22 of the Election Reform Act as taking effect whether paper ballots or voting machines are used, preamendment section 492(a) apparently remained in effect in the absence of voting machines. See Sec. 21 Election Reform Act of 1984.
 
 
 31
 These instructions, however, proscribe a voting procedure authorized in amended and operative section 584(c)(5). Application of the older version of section 492(a) to the election would therefore nullify the more recent amendment in section 584(c)(5), an amendment which the Virgin Islands legislature specifically provided was to become effective notwithstanding the savings clause in the Election Reform Act of 1984. See Sec. 22, Election Reform Act.[2] We feel bound by the more specific and subsequent enumeration in section 22 and hold that preamendment section 492(a) did not apply to the 1986 general election.
 
 
 32
 In the absence of preamendment section 492(a), there is no provision in the Virgin Islands election law requiring total invalidation of mismarked ballots.[3] Indeed, the statute suggests the opposite.
 
 
 33
 One provision which has remained constant through the various amendments is section 584(d):
 
 
 34
 In any case of doubt or conflict, the marking of the ballot shall be deemed to be valid in such a way that wherever the intention of the voter appears, although the marking may be defective, the ballot shall be deemed to be valid and such intention given effect.
 
 
 35
 18 V.I.C. Sec. 584(d) (1985 Supp.). In Melchior v. Todman, 296 F.Supp. 900, 7 V.I. 583 (D.V.I.1968), this provision was used to justify the counting of ballots mismarked in one section as votes for other offices if the voter's intent as to those offices was clear. Chief Judge Hastie, sitting by designation, rejected the disenfranchising consequences of the total invalidity rule.
 
 
 36
 The Melchior statute did not contain the total invalidation language of preamendment section 492(a). We are confronted with a similar case. Preamendment section 492(a) could not be applied to this election in a manner consistent with new section 584(c)(5). Indeed, the Board of Elections realized this and included the instructions from amended section 492(a) on the ballots. Thus we are in effect dealing with a situation where there was no automatic invalidation language in the statute. Absent an unequivocal legislative statement to the contrary, we are compelled to uphold the voter's intent to the extent it can be ascertained. The district court correctly determined that the mismarked ballots should be counted as votes for those offices for which the voter's intent is clear. In so concluding we do not wish to imply that this is an easy case.
 
 III.
 
 37
 Accordingly, we will affirm the January 8, 1987 order of the district court denying O'Bryan's motion for reconsideration of the writ of mandamus issued by it.
 
 
 
 [1]
 Appellant does not challenge the application of section 21 to the 1986 election
 
 
 [2]
 Neither side suggests that the language of preamendment section 492(a) trumps amended section 584(c)(5) such that a ballot is invalid if the voter marked a party symbol and any non-party candidate even though the party had not fielded a complete slate of candidates
 
 
 [3]
 The amendments to section 492(a) delete the total invalidity language. We do not rely on this as a basis for determining that the legislature intended the rule of partial invalidity to govern paper ballot elections. The invalidating language is unnecessary in the context of electronic voting machines because, under the Election Reform Act, no electronic voting machine system will be approved unless it "may be set to reject all votes for any office or measure when the number of votes therefor exceeds the number which the voter is entitled to cast." 18 V.I.C. Sec. 523(3) (1985 Supp.)